UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ALLAN BRITTLE, JR., | CIVIL NO. 06-2092 (RHK/AJB) |
| PLAINTIFF, | |
| V. | REPORT AND RECOMMENDATION ON THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT |
| LINDA MCMAHON, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| DEFENDANT. | |

Jennifer G. Mrozik, Esq., for Plaintiff, Allan Brittle, Jr.

Rachel K. Paulose, United States Attorney, and Lonnie F. Bryan, Assistant United States Attorney, for Defendant, the Commissioner of Social Security.

## I. INTRODUCTION

Allan Brittle, Jr. ("Plaintiff") disputes the unfavorable decision of the Commissioner of the Social Security Agency ("Commissioner") denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act. This matter is before the court, United States Magistrate Judge Arthur J. Boylan, for a report and recommendation to the District Court on the parties' cross motions for summary judgment. *See* 28 U.S.C. § 636 (b)(1) and Local Rule 72.1. Based on the reasoning set forth below, this Court **recommends** that Plaintiff's Motion for Summary Judgment **be DENIED** [Docket No. 8] and that the Commissioner's Motion for Summary Judgment [Docket No. 11] **be GRANTED.**

1

**II.     ISSUES**

The primary issues before the Court are: (1) whether Administrative Law Judge ("ALJ") David K. Gatto failed to fully develop the record on Plaintiff's psychological impairments; (2) whether the ALJ erred in discounting the opinions of Plaintiff's treating physicians; and (3) whether the ALJ erred in his determination of Plaintiff's credibility.

**III.    PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on August 9, 2002, alleging disability as of June 1, 2002.  (Tr. 28).  The state agency denied Plaintiff's claim initially and on reconsideration.  Plaintiff made a timely request for a hearing.

On April 21, 2005, ALJ Gatto conducted an administrative hearing on Plaintiff's application for DIB.  On June 23, 2005, ALJ Gatto issued an unfavorable decision, finding that while Plaintiff was not able to perform her past relevant work, she was able to perform other jobs which existed in significant numbers in the economy.  (Tr. 39-40).  Plaintiff filed a request for review to the Appeals Council.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  Based on the Commissioner's final decision denying DIB, Plaintiff filed an action in this Court to reopen the matter.  Both parties have filed motions for summary judgment.

**IV.     FACTUAL BACKGROUND AND MEDICAL HISTORY**

Plaintiff was 48 years old at the time of the ALJ's decision (Tr. 40, 115).  Plaintiff has a college degree in mechanical engineering.  (Tr. 46).  Plaintiff previously worked as a mechanical engineer and product engineer.  (Tr. 38).  Plaintiff asserts that he is unable to work because of his chronic lumbar

disc disease secondary to disc herniations and surgeries with radiating pain down his left leg and major depression. Thus, Plaintiff's impairments primarily deal with his back condition and mental condition.

**Back Condition**

Plaintiff has a long history of back problems which predates his alleged onset date of disability. Plaintiff initially injured his back in 1989 when he and several other individuals were lifting a 600 pound machine. (Tr. 188). Consequently, Plaintiff required four back surgeries. (Tr. 188). An MRI of Plaintiff's back from 1999 "showed evidence of an extruded left posterior lateral disc herniation at L5-S1 which led to his last surgery . . . in April of 1999." (Tr. 188.)

On January 18, 2000, Plaintiff's treating physician, Dr. Robert A. Wengler, noted that Plaintiff was "functioning reasonably well since his last surgery." (Tr. 187). Plaintiff reported that he could not find a job in the mechanical engineering field. (Tr. 187).

On February 7, 2001, Dr. Wengler noted that Plaintiff was working part-time as a substitute teacher. (Tr. 184). However, Plaintiff reported that he was frustrated and depressed by his employment situation. (Tr. 184). Dr. Wengler referred Plaintiff to a psychologist. (Tr. 184). On May 8, 2002, Plaintiff reported severe discomfort in the lower back and Dr. Wengler referred him to a pain clinic. (Tr. 183).

In July 2002, Plaintiff saw Dr. Matthew Monsein, for a pain management consultation. Dr. Monsein noted that Plaintiff "has continued to experience significant problems with his back" and Dr. Wengler imposed a 25 pound lifting restriction. (Tr. 188). Plaintiff reported that his chronic lower back pain ranged between a 4 to 6 on a scale of 0 to 10. (Tr. 188). Plaintiff indicated that he did light activities around the house, including minimal woodworking and working with computers. (Tr. 188).

Dr. Monsein recommended that Plaintiff undergo a pain rehabilitation program.  (Tr. 190).

In August 2002, Plaintiff saw Dr. Amy S. Linder, for an examination before he went on his trip to Australia where he planned to be certified in scuba diving.  (Tr. 192).  Dr. Linder cleared Plaintiff for participation in scuba diving, but recommended that he not carry his own tanks due to his chronic back pain.  (Tr. 193).  Plaintiff asserts that he has not gone scuba diving since this trip.  (Tr. 395).

In February 2003, a state agency physician reviewed the record and opined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds.  (Tr. 206).  The state agency physician also indicated that Plaintiff could stand and/or walk for about 6 hours in an 8 hour workday and sit (with normal breaks) for a total of about 6 hours in an 8 hour workday.  (Tr. 206).  Another state agency physician agreed with this assessment in September 2003.  (Tr. 212).

On April 19, 2004, Plaintiff saw Dr. Thomas Cohn for a pain management consultation.  (Tr. 252).  Plaintiff indicated that his pain was a 4 on a scale of 0 to10, but was continuous.  (Tr. 252).  Dr. Cohn opined that Plaintiff had "lumbosacral pain with radiation of the pain down the left lower extremity."  (Tr. 254).  Dr. Cohn recommended an epidural lumbar steroid injection and Vioxx for Plaintiff's pain.  (Tr. 254).  On September 21, 2004, Dr. Cohn noted that Plaintiff would benefit from conservative treatment, but would require prolonged management for his chronic pain.  (Tr. 251).

On February 5, 2005, Plaintiff saw Dr. Wengler with concerns of increasing discomfort in his lower back.  (Tr. 384).  Plaintiff reported that at times his back hurt to the extent he was unable to walk.  (Tr. 384).  Dr. Wengler advised Plaintiff that a 2-level fusion surgical procedure was an option for treating his problem.  (Tr. 384).

**Mental Condition**

On August 8, 2002, Plaintiff saw his treating psychiatrist, Dr. Richard D. Lentz, for a refill of his prescription medicines. (Tr. 245). Dr. Lentz noted that he last saw Plaintiff in October 2001 and informed Plaintiff that his prescriptions would not be refilled if he did not make an appointment. (Tr. 245). Plaintiff reported he was depressed and irritable. Dr. Lentz opined that Plaintiff had a major depressive disorder with sexual side effects. (Tr. 246). Dr. Lentz recommended that Plaintiff continue taking Zoloft[1] and try Wellbutrin.[2] (Tr. 246).

In October 2002, Plaintiff reported to Dr. Lentz that he was feeling "slightly" depressed. (Tr. 244). Plaintiff indicated that he felt his current medication of Zoloft and Wellbutrin may be helping. Dr. Lentz noted that the he endorsed Plaintiff's plan to apply for social security disability and believed that Plaintiff was "permanently disabled on the basis of the depression alone, which has not responded to treatment." (Tr. 244). Dr. Lentz indicated that Plaintiff's depression was a direct result of the pain and work injury he suffered. (Tr. 244). Dr. Lentz opined that Plaintiff's prognosis was poor. (Tr. 244).

On March 6, 2003, Dr. Dan Larson, a state agency psychiatrist, reviewed the record and opined that clinical data supported Plaintiff's depression. (Tr. 236). Dr. Larson opined that Plaintiff could "concentrate on, understand, and remember routine, repetitive instructions, but would have marked problems with both detailed and complex instructions." (Tr. 236). Dr. Larson also indicated that Plaintiff could carry out routine, repetitive tasks, but not tasks that were detailed or complex. (Tr.

---

[1] Zoloft "is prescribed for major depression - a persistently low mood that interferes with everyday living." *The PDR Family Guide to Prescription Drugs*, Three Rivers Press (8th ed. 2000).

[2] Wellbutrin "is given to help relieve certain kinds of major depression." *Id.*

5

236).  Dr. Larson opined that Plaintiff could handle the routine stressors in a repetitive work setting and adequately "function with the ordinary level of supervision found in most customary work settings."  (Tr. 236).

In May 2003, Plaintiff saw Dr. Lentz and reported that "[h]e still has some depression, irritability, anhedonia, and decreased interest."  (Tr. 240).  On examination, Dr. Lentz observed that Plaintiff had a "slight depressed mood."  (Tr. 240).  Dr. Lentz recommended Plaintiff continue taking Wellbutrin, taper off Zoloft and start Lexapro.  (Tr. 240).

On August 29, 2003, Plaintiff saw Dr. Lentz after returning from his trip in Australia.  (Tr. 268).  Plaintiff reported to Dr. Lentz that codeine was available over the counter in Australia and he took inappropriate doses.  (Tr. 268).  Dr. Lentz opined that Plaintiff was slightly depressed.  (Tr. 268).  Dr. Lentz recommended that Plaintiff continue taking Lexapro and Wellbutrin and to start taking 30 mg of Remeron.[3]

On October 10, 2003, Plaintiff saw Dr. Lentz with complaints of pain and depression.  (Tr. 266).  Plaintiff reported pain from when he worked on getting a boat out of the water.  (Tr. 266).  Dr. Lentz increased Plaintiff's dosage of Remeron and recommended that Plaintiff continue taking Wellbutrin and Lexapro.  Plaintiff made similar complaints to Dr. Lentz on subsequent visits.  In December 2003, Dr. Lentz noted that Plaintiff "has a low-grade mild chronic depression that is tolerable."  (Tr. 264).  Dr. Lentz increased Plaintiff's dosage of Remeron and recommended that Plaintiff continue taking Lexapro and Wellbutrin.  (Tr. 264).

---

[3]Remeron "is prescribed for the treatment of major depression - that is, a continuous depressed mood that interferes with everyday life."  *Id.*

In March 2004, Dr. Lentz noted that Plaintiff's mood was frustrated, but he had no psychosis, mood elevation, or depression. (Tr. 263). Dr. Lentz made adjustments to Plaintiff's dosage of medication. (Tr. 263). In April 2004, Dr. Lentz noted that Plaintiff's mood was mildly depressed and recommended that Plaintiff continue taking his medication. (Tr. 262). In July 2004, Dr. Lentz noted that Plaintiff was "doing generally well with regard to depression" and found that Plaintiff's mood was frustrated, but not prominently depressed. (Tr. 261). In October 2004, Dr. Lentz noted that Plaintiff's depression was generally well-controlled. (Tr. 260). Dr. Lentz described Plaintiff's mood as frustrated and discouraged, but probably not depressed. (Tr. 260). Dr. Lentz recommended that Plaintiff continue taking his medications. (Tr. 260).

## V.    TESTIMONY AT ADMINISTRATIVE HEARING

An administrative hearing took place before ALJ Gatto on April 21, 2005. (Tr. 42.) Plaintiff testified that he last worked as a mechanical engineer in September of 1998. (Tr. 47). Plaintiff stated that he has been unable to work since June of 2002 because of chronic pain in his lower back with radiating pain down his left leg and depression. (Tr. 48). Plaintiff testified that his pain is generally about a 4 or 5 and sometimes an 8 on a scale of 0 to 10. (Tr. 49). Plaintiff explained that his pain is aggravated by standing for a long period of time, bending forward, or driving a car. (Tr. 49).

Plaintiff stated that he mows the grass on his riding mower and does some of the laundry and cooking. (Tr. 51). Plaintiff also testified that he uses the computer and the internet for such things as ordering groceries. (Tr. 51).

Plaintiff testified he could walk for 30 minutes and "there might be days when 45 minutes would be okay." (Tr. 53). Plaintiff also stated that sitting aggravates his back spasms in the lower back and

the pain in his leg. (Tr. 54). Plaintiff indicated that he has trouble sleeping because of his pain. (Tr. 56). Plaintiff also testified that he has decreased energy and difficulty concentrating. (Tr. 51, 56).

### Medical Expert's Testimony

Dr. Steiner reviewed the record and testified that Plaintiff had the residual functional capacity ("RFC") to perform light level work with occasional lifting of 20 pounds and the ability to alternate between sitting and standing every hour. (Tr. 66-67, 69-71). Dr. Steiner felt that Dr. Wengler issued a conflicting RFC on Plaintiff's lifting restriction. In 2000, Dr. Wengler testified in a deposition that the 25 pound restriction he imposed should be changed to a 10 pound restriction. (Tr. 381-82). However, in 2002, Plaintiff told Dr. Monsein that Dr. Wengler imposed a 25 pound lifting restriction. (Tr. 69). Dr. Steiner limited Plaintiff to occasional climbing, bending, twisting, stooping, kneeling, crouching, or crawling and occasional exposure to vibration. Dr. Steiner also limited Plaintiff to simple, routine, repetitive tasks in a low stress work environment with brief and superficial contact with the public, co-workers, and supervisors. In addition, Dr. Steiner opined that the record did not warrant a further surgical procedure.

### Vocational Expert's Testimony

The vocational expert, Juletta Harren, also testified at the administrative hearing (Tr. 71). The ALJ posed a hypothetical to the vocational expert ("VE") which listed Plaintiff's RFC and limited him to performing light work. (Tr. 73). The VE testified that Plaintiff could not perform his past relevant work. (Tr. 73). However, the VE opined that Plaintiff could perform unskilled clerical type jobs such as an order clerk, credit clerk, and records clerk (total of 18,500 jobs). (Tr. 74-76). The VE also opined that Plaintiff could perform unskilled assembly production type jobs such as an assembler

(10,000 jobs), inspector (3,000 jobs), and packager (5,000 jobs). (Tr. 74-75). The VE stated that the clerical jobs would probably be the most appropriate for Plaintiff based on Dr. Wengler's suggestion that Plaintiff could perform a desk job. (Tr. 75, 382).

## VI. THE ALJ'S FINDINGS AND DECISION

On June 23, 2005, ALJ Gatto issued his decision denying Plaintiff's application for DIB. The ALJ followed the sequential five-step procedure as set out in the rules. *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a). The Eighth Circuit has summarized these steps as follows: (1) whether the claimant is currently engaged in "substantial gainful activity;" (2) whether the claimant suffers from a severe impairment that "significantly limits the claimant's physical or mental ability to perform basic work activities;" (3) whether the claimant's impairment "meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity [RFC][4] to perform his or her past relevant work;" and (5) if the ALJ finds that the claimant is unable to perform the past relevant work then the burden is on the ALJ "to prove that there are other jobs in the national economy that the claimant can perform." *Fines v. Apfel*, 149 F.3d 893, 894-95 (8th Cir. 1998).

The ALJ determined that Plaintiff met the requirements for the first two steps of the disability determination procedure. (Tr. 30). The ALJ found that Plaintiff has not engaged in substantial gainful activity since June 1, 2002.[5] (Tr. 30). At step two, the ALJ found that Plaintiff's chronic lower back

---

[4] A claimant's RFC is the most the claimant can still do despite the claimant's physical and/or mental limitations. 20 C.F.R. § 404.1545.

[5] The ALJ concluded that Plaintiff's work as a substitute teacher was part time and varied and did not result "in earnings at a level presumptive of substantial gainful activity." (Tr. 30).

9

pain, left leg pain, and depression are considered "severe" based on the requirements in the regulations. (Tr. 30). At step three, the ALJ determined that Plaintiff's impairments do not meet or equal one of the listed presumptively disabling impairments. (Tr. 30).

At step four, the ALJ determined that Plaintiff had the following RFC: (1) limited to a light level of work; (2) lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; (3) ability to alternate between sitting and standing every hour; (4) occasionally climb, bend, twist, stoop, kneel, crouch, or crawl; (5) occasional exposure to vibration; and (6) limited to simple, routine, repetitive, low stress work, with brief and superficial contact with the public, co-workers and supervisors. (Tr. 32).

Based on the RFC and the testimony of the VE, the ALJ determined that Plaintiff could not perform his past relevant work as a mechanical engineer and product engineer. (Tr. 38). However, the ALJ concluded that Plaintiff could perform other jobs that existed in significant numbers such as unskilled assembly production type jobs and general clerk positions. (Tr. 39). Accordingly, ALJ Gatto found that Plaintiff was not disabled under the regulations imposed by the Social Security Act. (Tr. 39-40).

**VII.   DISCUSSION**

    *A.    Standard of Review*

This Court will affirm the ALJ's findings that the claimant was not under a disability if the findings are supported by substantial evidence based on a review of the entire record. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Id.* at 747 (quoting *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998)). However, the review the Court

undertakes must go beyond solely the examination of the record for evidence in support of the Commissioner's decision. *Id.* The Court must additionally examine the record for evidence that detracts from that decision. *Id.*

Nevertheless, as long as there is substantial evidence to support the decision, this Court will not reverse it simply because substantial evidence exists in the record that would support a contrary outcome or because this Court might have decided differently. *Id.*

*B.     Analysis of Decision*

Plaintiff argues that this Court should reverse the ALJ's unfavorable decision for three reasons. First, Plaintiff asserts that the ALJ failed to fully develop the record on Plaintiff's depression. However, Plaintiff's contention is without merit because the record contains substantial documentation of Plaintiff's medical history. The Court finds that the ALJ developed a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994).

Next, Plaintiff argues that the ALJ failed to assign proper weight to the opinions of Plaintiff's treating physicians. Plaintiff also asserts that the ALJ erred in his determination of Plaintiff's credibility.

**The Opinions of Dr. Wengler and Dr. Lentz Were Inconsistent with the Record**

Plaintiff argues that the ALJ erred by not giving controlling weight to the opinions of his treating physicians, Dr. Wengler and Dr. Lentz. Generally, "a treating physician's opinion is due controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (quotations omitted); 20 C.F.R. § 404.1527(d)(2).

Plaintiff only saw Dr. Wengler once during the period of his alleged onset date of disability

11

through the date of the ALJ's decision. (Tr. 384). Dr. Wengler did not render treatment during this time and never opined that Plaintiff was disabled due his physical impairments.

In 2002, Plaintiff reported to Dr. Monsein that his lower back pain ranged between a 4 to 6 on a scale of 0 to 10. However, Plaintiff indicated that he did some part time teaching and light activities around the house, including working on the computer. Dr. Linder also cleared Plaintiff for participation in scuba diving, but advised him not to carry his own tanks due to his back pain. In 2003, state agency physicians reviewed the record and opined that Plaintiff could perform a modified range of light level work. In 2004, Plaintiff reported that his pain was a 4 on a scale of 0 to 10 and Dr. Cohn noted that Plaintiff would benefit from conservative treatment. Furthermore, there is no objective evidence that supports Dr. Wengler's opinion from 2000 that Plaintiff could only lift up to 10 pounds. The substantial evidence in the record for the relevant time period showed a weight restriction of 25 pounds. Dr. Steiner concluded that Plaintiff could perform a restricted range of light level work with occasional lifting of 20 pounds. Dr. Steiner's opinion was consistent with the evidence in the record.

Moreover, a statement from a medical source that a claimant is "disabled" or "unable to work" does not necessarily mean that the Commissioner will find a claimant disabled. 20 C.F.R. § 404.1527(e)(1); *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004). Thus, it is appropriate for the ALJ to disregard a treating physician's opinion when it "consists of nothing more than vague, conclusory statements." *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004).

Here, the ALJ reasonably concluded that Dr. Lentz's opinion was conclusory and not supported by the record. (Tr. 35). In October 2002, Dr. Lentz noted that he endorsed Plaintiff's plan to apply for social security disability and believed that Plaintiff was "permanently disabled on the basis

12

of the depression alone . . . ." (Tr. 244). However, Dr. Lentz's opinion was inconsistent with the substantial evidence in the record. Indeed, Dr. Lentz's treatment notes showed mild findings of depression and a conservative course of treatment.

The state agency psychiatrist reviewed the record and opined that Plaintiff could understand and remember routine and repetitive instructions and handle the routine stressors in a repetitive work setting. Notably, Dr. Lentz's treatment notes indicated that Plaintiff's depression was generally well-controlled and tolerable.

"It is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment." *Harris v. Barnhart*, 356 F.3d 926, 931 (8th Cir. 2004). Notably, the regulations specifically allow an ALJ to consider the opinions of non-treating physicians. 20 C.F.R. § 404.1527(f).

The ALJ determined that the opinions of Dr. Wengler and Dr. Lentz were inconsistent with substantial evidence in the record and appropriately considered the opinions of other physicians. The ALJ gave weight to the opinions of the state agency physicians and psychologists. The ALJ also gave significant weight to Dr. Steiner's opinion because it was consistent with the overall evidence in the record.

### **Plaintiff's Subjective Complaints Lacked Credibility**

In determining the credibility of a claimant's subjective complaints, the ALJ looks to several factors as set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). These factors include: (1) daily activities; (2) duration, frequency and intensity of pain; (3) dosage and effectiveness of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *Id.* at 1322. These factors

13

must be considered in the light of "the claimant's prior work record, and observations by third parties and treating and examining physicians . . . ." *Id.* "[A]n ALJ may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (citations omitted). An ALJ may, however, discount a claimant's subjective complaints if the complaints are inconsistent with the record as a whole. *Id.* at 792.

Plaintiff makes the blanket assertion that the ALJ did not address each of the *Polaski* factors. However, the record and the ALJ's decision contradicts such an assertion.

Here, ALJ Gatto concluded that Plaintiff's subjective complaints and alleged limitations were not fully credible. (T. 38.) The ALJ found that the objective medical evidence was inconsistent with Plaintiff's complaints of disabling pain. (Tr. 32-38).

The ALJ discussed Plaintiff's daily activities and how these factors related to the determination of credibility. The ALJ noted Plaintiff's complaints regarding the frequency and intensity of his lower back pain and the radiating pain down his left leg. The ALJ detailed the dosage and effectiveness of the medication prescribed to Plaintiff, including the sexual side effects from the medications. However, the ALJ noted that the record did not reveal that Plaintiff had any other significant side effects to his medications. The ALJ stated that the evidence in the record did not indicate that Plaintiff's medications were ineffective in any manner or that Plaintiff had to seek emergency treatment on his symptoms.

The ALJ reasonably concluded that Plaintiff's symptoms were managed by conservative treatment such as "evaluations, follow-up examinations, physical therapy sessions, steroid injection therapies, a chronic pain program, home exercises, psychiatric medication management, and oral

14

medications." (Tr. 37). Finally, the ALJ noted Plaintiff's history of back problems and discussed the functional restrictions as set forth by physicians and testifying experts.

An ALJ is entitled to considerable deference in assessing a claimant's credibility. *See Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996) (explaining that the court "will not substitute [its] opinion for that of the ALJ, who was in a better position to assess [the claimant's] credibility."). Here, the ALJ's credibility finding was reasonable and supported by the evidence in the record. Therefore, the Court will not disturb the ALJ's assessment.

**VIII.   CONCLUSION AND RECOMMENDATION**

Accordingly, the Court **recommends** that Plaintiff's Motion for Summary Judgment **be DENIED** [Docket No. 8] and the Commissioner's Motion for Summary Judgment **be GRANTED.** [Docket No. 11].

Dated: 2/20/07

s/ Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.2 (b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **March 7, 2007.**